On cross-examination this question was put to plaintiff:

"Q. These goods were sent to him, and he had absolute power of sale, or was he merely, as you say, to return the proceeds to you? Did he have absolute power to sell? A. He was authorized to sell at certain prices. Q. And from time to time he sold the goods by your consent? A. Yes; and he turned the proceeds to me. Q. You never consented— That makes $322.50, and he paid you, as you claim, $165? A. Yes, sir."

Thus, the complaint, and the practical construction thereof by the plaintiff, as shown by his testimony, show a cause of action for the proceeds received for sales. In the language of the court of appeals in Rosenberg v. Block, 118 N. Y. 329, 330, 23 N. E. 190:

"The plaintiffs do not attempt to disaffirm the sale and make the defendants liable for breach of instructions or for conversion, but, ratifying the sale, they seek to recover the proceeds received. Scott v. Rogers, 31 N. Y. 676; Laverty v. Snethen, 68 N. Y. 522. Thus, the action is for money had and received," etc.

I am not unmindful of the fact that the plaintiff alleges that the defendant wrongfully converted the moneys collected, and that he fails to account or to return the bicycles, but these allegations do not make the action ex delictu, but in this case they are mere surplusage. Segelken v. Meyer, 94 N. Y. 473, 484.

The judgment should be reversed, and a new trial ordered, with costs to abide the final award of costs. All concur.

---

MUNSON et al. v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 20, 1900.)

1. RAILROADS—FIRE—EVIDENCE—SUFFICIENCY—NONSUIT.

A coal shed and trestle situated by a railroad track caught fire on the roof from sparks from an engine, which plaintiffs alleged was a certain passenger engine, and were destroyed. A freight train passed the coal shed on a track 43 feet from the shed, and about 10 or 12 minutes before the passenger train. The freight train went towards the west, which was slightly down grade, and the engine did not have to labor while passing the shed. There was no evidence that the spark arrester on the freight engine was defective, or that it threw out unusually large sparks. The fire was discovered from 3 to 10 minutes after the passenger train passed on a track 77 feet from the coal shed. The passenger train was long, it was up grade, and the engine had to labor hard till nearly opposite the coal shed. There was evidence tending to show that the passenger engine emitted an unusual number of very large live sparks. *Held*, that there was sufficient evidence that the fire was caused by the passenger engine to justify the jury in so finding, and hence a nonsuit was erroneous.

2. SAME—NEGLIGENCE.

A coal shed and trestle were set on fire by sparks from a passenger engine, which, in going by the shed, emitted an unusual number of large live sparks, which rained upon a warehouse at the same distance from the track as the coal shed, and set fire to the shawl of a woman who was standing on the warehouse platform. Many of the sparks were too large to have been forced through the standard netting of a spark arrester unless the netting was broken. Two inspectors testified that they had inspected the engine before and after the fire, and that it was in good order, but stated that, if the engine emitted sparks of that size, the spark arrester must have been defective before the engine started that morning. *Held*, that the evidence was sufficient to justify a finding that the spark ar-

rester was defective, and that the railroad company was guilty of negligence in not inspecting and repairing it, and hence a judgment of nonsuit in an action for the loss was erroneous.

Action by John A. Munson and certain insurance companies against the New York Central & Hudson River Railroad Company for damages by fire set by sparks from an engine. At close of plaintiffs' evidence a nonsuit was granted. Motion for new trial heard in the first instance at the appellate division. Granted.

See 65 N. Y. Supp. 848.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Horace McGuire, for plaintiffs.

Albert H. Harris, for defendant.

LAUGHLIN, J. On the 18th day of September, 1899, a coal shed and trestle owned by the plaintiff Munson, situate on the northerly side of defendant's tracks, 925 feet easterly of its station at Savannah, was burned. The insurance companies paid the loss, aggregating $2,302.12, for which they were liable upon standard policies containing subrogation clauses, took an assignment of Munson's claim, and brought this action to recover over from defendant, on the theory that the fire was set through its negligence. The specific allegation is that the fire was communicated by the engine which was drawing the accommodation, a local passenger train known as "No. 66," and that the spark arrester of this engine was broken and out of repair, and permitted unusually large coals of fire and burning cinders to pass through the smokestack. We are of opinion that the evidence was sufficient to require the submission of the case to the jury. The weather was very dry and warm, and had been for a long period. The day in question was described as a "burning day," and there was quite a strong wind from the south. The trestle and coal shed were 180 feet long and 30 feet wide, and were constructed of pine siding, hemlock, beech, and pine timbers. The height is not given. The roof was shingled, and the fire started on the shingles near the westerly end and southerly side. When the fire was first discovered, some of the witnesses describe it as appearing in only one spot or patch, the size of a man's head, or of a plate, or of a good-sized plate; and others say there were two or three spots of about that size, just a little way apart. It is not seriously denied that this fire was communicated by one of defendant's engines, but it is contended that it is just as probable that it was communicated by the engine drawing the local freight, which passed the premises going westerly a few minutes before the passenger train passed easterly. The tracks are on a curve at the station, and the grade ascends from that point to a point about opposite or a little west of the coal shed, and from there it descends somewhat towards the east; the precise grade not being disclosed by the record. The testimony presented on the part of the plaintiffs shows that the local freight came by the coal shed on track 3, which was 43 feet therefrom, and had passed onto a branch track west of the station some minutes before the passenger train came in from

the west; that the passenger train went east on track 1, which was 77 feet and 7 inches from the coal shed; that the local freight passed the coal shed from 10 to 12 minutes before the passenger train passed the same point; and that a boy who was standing on Munson's warehouse switch, probably 650 or 700 feet from the coal shed, and who observed that the engine of the passenger train threw out red cinders, one of which struck him in the neck, discovered the fire some two or three minutes thereafter. The other evidence introduced by plaintiffs tended to show that the fire was observed by some one upon a freight train coming westerly, from 3 to 10 or 15 minutes after the passenger train passed easterly, and an alarm was given by a continuous tooting of the whistle of the engine of this freight train. The conductor of the local freight testified that the engine of his train did not labor while passing the coal shed. The nature and dryness of the material in which the fire originated, the condition of the weather, the length of time that elapsed between the passing of the local freight and passenger trains, the evidence that the engine of the freight train did not labor while passing the coal shed, the absence of evidence that the spark arrester of the engine drawing the local freight was defective, or that that engine threw out live cinders in unusual quantities, or of unusual size, together with the other evidence introduced, tending to show that the spark arrester on the passenger engine was defective, and permitted the escape of live cinders in unusual quantities and of uncommon size, at least made it a question of fact for the jury as to whether the fire was not set by the engine of the passenger train, and would have warranted a finding that it was. Other evidence was given upon the trial tending to show, and which would have warranted a finding, that the engine of the passenger train labored hard as it started east from the station on the curve; that, while it was passing a distance of about 200 feet, large quantities of live cinders, varying in size from that of a pea or bean to half an inch in diameter, or the size of the end of a man's finger, were thrown from the smoke-stack, and that these cinders were carried by the wind several rods north from the track, and were live when they struck the ground; that they rained down and rattled upon Munson's office and warehouse, situate about the same distance from the track on which the train was passing as the coal shed, setting fire to the shawl worn by his wife, who was on a platform 3 feet by 10 or 12 feet in size, in front of and adjoining his office; that the cinders which burned Mrs. Munson's shawl, and nearly a handful which fell on this platform, were preserved and introduced as exhibits upon the trial; that many of such exhibits could not be forced through the standard netting in general use upon the railroads for spark-arresting purposes, the meshes of which are five-sixteenths of an inch, without being broken; that such sparks and cinders could not escape through such a netting if in good order and repair. Although the engineer in charge of this passenger engine testified that he observed nothing to indicate that the netting was out of order, and an inspector at the Buffalo roundhouse testified that he inspected the engine before 5:30 o'clock that morning, and again two days there-

after, and on each occasion found it in good order, and the inspector at Syracuse testified that he inspected it on the 20th of the same month and found it in good order, and both inspectors say that, if there had been any defect in the netting, their inspection was such that they would have discovered it, yet the engineer, who had an opportunity to observe whether anything unusual occurred from the time he took the locomotive out of the roundhouse at Buffalo until he passed this point, and both inspectors, testified that if these cinders, which are exhibits, passed through the netting, it was defective and out of order when inspected at Buffalo in the morning before starting. We are of opinion that the evidence would have justified the jury in finding not only that the fire was set by the engine of the passenger train, but that the spark arrester of that engine was out of order, and permitted the escape of sparks of unusual size and in unusual quantities, and that defendant was guilty of negligence in failing to properly inspect and repair the same. No eyewitness observed the character or extent of sparks or cinders emitted from this engine while passing the coal shed, or within from 650 to 700 feet therefrom; but in view of the distance that the sparks would have to travel and remain sufficiently live to ignite the shingles, the extent to which· this engine was emitting sparks after starting from the station, and the size and character thereof, the fact that the engine was drawing seven or eight cars, and continued on an up-grade until it reached or nearly reached the coal shed, we think the inference might fairly be drawn that the fire was set by sparks such as could not have passed through the meshes of a spark arrester of standard gauge and in good order and repair. Under well-settled authorities, the doctrine of which need not be extended, plaintiffs made out a prima facie case of negligence on the part of the defendant, which required the submission of that question to the jury. Flynn v. Railroad Co., 142 N. Y. 11–19, 36 N. E. 1046; Brown v. Railroad Co., 4 App. Div. 466, 38 N. Y. Supp. 655; McCaig v. Railway Co., 8 Hun, 599; Van Nostrand v. Railroad Co., 78 Hun, 549, 29 N. Y. Supp. 625.

It follows that the nonsuit was erroneous and plaintiffs' exceptions must be sustained, and a new trial ordered, with costs to plaintiffs to abide the event. All concur.